UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LATONIA SMITH, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:04-cv-1487-JDT-TAB |
| ) | |
| ) | |
| JOHN E. POTTER, POSTMASTER ) | |
| GENERAL, UNITED STATES POSTAL ) | |
| SERVICE, ) | |
| ) | |
|     Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 50)**[1]

    Plaintiff Latonia Smith, an African-American female, is a Part-time Distribution Clerk for the United States Postal Service.  While at work on October 31, 2002, she was involved in an altercation with a white, male co-worker.  She claimed to her employer that the co-worker hit her like a football player blocking someone and that she sustained an injury from the hit.  He claimed he was only fooling around and did not hit her very hard.  He also claimed Smith became irate and that while he was trying to apologize, she hit him.  As part of an investigation, employees of the United States Postal Service interviewed both of them and several witnesses, and believed the co-worker instead of Plaintiff; thus, Plaintiff was disciplined more harshly than her co-worker.

---

[1] This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

Plaintiff filed a complaint in United States District Court for the Southern District of Indiana on September 10, 2004, alleging violations of Title VII of the Civil Rights Act of 1964. She alleged three counts: one of sexual discrimination, one of racial discrimination, and one of retaliation. She has subsequently dropped the count based on retaliation. On June 15, 2006, Defendant filed a motion for summary judgment. Plaintiff filed a response on July 28, 2006. Defendant filed a reply September 14, 2006. The motion is ripe for adjudication and the court rules as follows:

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). In this case, the court must view the facts in a light most favorable to Plaintiff. It is with this standard in mind that the court sets forth the following facts for summary judgment.

**II.     FACTS**

On October 31, 2002, an employee meeting was held in the Nora Branch Postal facility in Indianapolis, Indiana.  About ninety carriers and clerks attended, one of which was Plaintiff Latonia Smith, a Part-time Regular Distribution Clerk.  Smith is an African-American female.  After the meeting ended, it was announced that doughnuts were available in the break room.  There are two break rooms at the Nora facility and many employees headed to one of them to find there were no doughnuts there.  Three of these employees—Chris Litsey, Dave Hudson, and John Page—turned around and headed to the other break room.  The three were walking toward Smith when Litsey, a Caucasian male, and Smith had what can only be described as an altercation.  What transpired is greatly in dispute, but according to Smith, Litsey ran into her as if she was a "football player he was trying to block" (Def.'s Ex. V-1, at 1) with a force that "nearly drove [her] to the floor" (*Id.* at 5).

Later that day, Smith reported the incident to Rhonda J. Davis, Litsey's immediate supervisor.  According to Smith, Davis responded, "Chris?  Chris hit you?  Not Chris."  (Smith Dep. 135-36.)  Davis, like Smith, is an African-American female.  Smith did not appear injured to Davis, and she did not say she was injured.  Davis immediately spoke with Litsey.  Litsey admitted that he had lightly hit shoulders with Smith as they passed in the hallway.  He told Davis that a month earlier Smith had accidently run into him with a cart and that since then they would play act like they were getting out of each other's way.  When Davis told Smith what Litsey had said, Smith said that Litsey was lying but that Davis could "just forget it."  (*Id.* at 135.)

Near the end of her work day, Smith brought her complaint to Cathy Vaughn Jarrett, Davis's supervisor. Since speaking with Davis, Smith had realized that she could not lift her arm. Vaughn Jarrett made arrangements for Smith to go to the medical clinic for treatment.[2] Vaughn Jarrett also began an investigation into the incident. That day, she obtained statements from Litsey and John Page. (Def.'s Ex. V-1, at 2-3.) She also obtained a statement from Smith, although it is unclear when because the statement is not dated. (*Id.* at 1.)

The statements from Litsey and Smith preserved in writing what they had earlier told Davis. Litsey claimed that he and Smith had only lightly hit shoulders, Smith that Litsey bumped her as if he was blocking during a game of football. Page's terse statement read in its entirety: "Chris bumped into Latonya [sic] as everyone was searching for donuts." (*Id.* at 3.)

Apparently Smith was unhappy with the lack of speed and seriousness that the Nora facility was handling her complaint because she wrote a letter to the local Postal Inspector on November 4, 2002, and copied Vaughn Jarrett and an EEOC attorney. In the letter, Smith claims she "was made to feel that this incident was insignificant." (*Id.* at 5.) She ended her letter, "I only want to be made whole and provided a safe and violence free workplace environment, if the USPS is genuinely interested in enforcing the Zero-Tolerance policy on workplace violence." (*Id.* at 6.)

---

[2] She was diagnosed with a right shoulder contusion/strain and put on work restrictions. (Def.'s Ex. Y-1.)

Whether due to the letter or coincidence, Vaughn Jarrett got a statement the same day from James Guynn who saw some of the altercation on October 31. He did not see any physical contact but did see Smith yelling and pointing her finger at Litsey and saying "You must have lost your mind." (*Id.* at 4.)

The next day on November 5, 2002, William Breen, a Supervisor, Customer Services, interviewed two more witnesses at Vaughn Jarrett's request. These were Dave Hudson and Larry Rutter. According to Breen, Hudson saw Litsey walk by and joke with Smith and that Litsey reached out and flipped Smith with the back of his open hand causing Smith to "[go] off on him." (Breen Decl. ¶ 5; Vaughn Jarrett Decl. Ex. V-1, at 7.) Litsey tried to apologize, but Smith walked off. Rutter told Breen he did not see what happened. (Vaughn Jarrett Decl. Ex. V-1, at 8.)

Vaughn Jarrett reinterviewed Litsey on November 6 to ask about Hudson's comment that Litsey flipped Smith with his open hand. Litsey claimed this must have been when he put his hand on her shoulder to apologize for bumping into her. Two weeks later on November 14, Vaughn Jarrett received one additional statement from Nancy Keller. Keller heard loud voices and then turned to see what was happening. She saw Smith yelling at Litsey and then saw Smith "hit his arm while she was yelling at him." (Vaughn Jarrett Decl. Ex. V-1, at 12.)

This entire investigation was conducted with the guidance of Labor Relations Specialists from the Postal Service, in particular Mark A. Moore, a core member of the

Threat Assessment Team.[3]  Moore also advised Litsey's immediate supervisor, Davis, on what level of discipline was necessary for Litsey.  Davis proposed to the Labor Relations Office that Litsey be issued a Letter of Warning because the investigation concluded that Litsey made physical contact with Smith that resulted in injury to Smith.  Vaughn Jarrett concurred in the request and it was sent to the Labor Relations Department December 12, 2002.  The Labor Relations Office drafted a Letter of Warning for Davis to review and sign.   On December 17, 2002, Davis issued the letter to Litsey.  The letter explained: "Your actions of 'play acting' resulting in physical injury can not be condoned."  (Def.'s Ex. 4.)  It continued: "It is hoped that this official letter of warning will serve to impress upon you the seriousness of your actions and that future discipline will not be necessary. . . . However, I must warn you that future deficiencies will result in more severe disciplinary action being taken against you."  (*Id.*)

Meanwhile, according to Vaughn Jarrett, Keller's comment that Smith "hit his arm while she was yelling at him" concerned Vaughn Jarrett because it indicated Smith may have intentionally struck Litsey.  Litsey also made an offhand comment during his interview that Smith did not mean to hit him.  On December 20, 2002, she reinterviewed Keller, Hudson and Page.  Keller reaffirmed that she saw Smith hit Litsey's arm.  Hudson also said Smith slapped Litsey's arm.  Page said that Litsey did not bump Smith

---

[3] Moore described his duties as a member of the Greater Indiana Threat Assessment Team as receiving initial reports of threats or violent behavior in the Greater Indiana District, conducting investigations, and providing guidance to management as to their responsibilities related to threats and violent acts.  (Moore Aff. ¶ 4.)

intentionally but that he left as soon as he saw the look in Smith's face so did not see anything else.

On December 24, 2002, Vaughn Jarrett interviewed Litsey again with questions provided by Labor Relations Specialist Moore.  Litsey said that Smith had hit him.  On January 2, 2003, Breen interviewed Smith in the presence of a union representative also with questions provided by Moore.  She denied hitting Litsey both before and after being confronted with Keller and Hudson's statements to the contrary.

At the conclusion of this investigation, Vaughn Jarrett concluded that Smith had hit Litsey.  Moore advised Vaughn Jarrett that the appropriate discipline for Smith was a Notice of Removal.  Vaughn Jarrett provided the results of the investigation to Debra Young, Smith's supervisor.  Based on her own review, Young concluded that Smith intentionally struck Litsey and had not been truthful during the investigation.  Young contacted Labor Relations for advice and was advised that removal was appropriate.  Young prepared a Request for Disciplinary Action-Performance for Vaughn Jarrett and Labor Relations to review based on Smith's intentionally striking Litsey.  Labor Relations added a charge of providing false information during an official investigation.  On January 21, 2003, Young issued Smith a Notice of Removal for physically striking an employee and providing false information during an official investigation.  On September 29, 2003, Smith's removal was modified by a labor relations specialist to a long-term suspension without pay.  Having been off work roughly nine months, she returned to work on October 4, 2003.

**III.     DISCUSSION**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex."  42 U.S.C. § 2000e-2(a)(1).  Smith believes that she was discriminated against (either on the basis of her gender or her race) when she was given a long-term suspension without pay while Litsey, the real perpetrator, was given only a Letter of Warning.

Smith may advance her claim either by the direct or indirect method.  *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999).  Because Smith does not have any direct evidence of discrimination, she must proceed with the indirect method laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this method, Plaintiff must first lay out a prima facie case of discrimination.  This case is generally made by showing that plaintiff: (1) is a member of a protected class; (2) was performing the legitimate expectations of her employer; (3) was subjected to an adverse employment action; and (4) was treated less favorably than similarly situated employees not in the protected class.  *E.g.*, *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750 (7th Cir. 2006).  If Plaintiff meets this prima facie case, the burden shifts to the Defendant to show a legitimate, nondiscriminatory reason for the adverse employment action.  If Defendant can do this, then the burden shifts back to the Plaintiff to show that this reason is merely pretext.  *See Debs v. Ne. Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998).  In this case, the court will move directly to the pretext analysis because it finds that Plaintiff cannot meet her burden at that stage.  *See Simmons v. Chi. Bd. of Educ.*, 289

F.3d 488, 492 (7th Cir. 2002); *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001); *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998).

The Seventh Circuit has recently reiterated that a plaintiff proves pretext by showing that the employer's proffered nondiscriminatory reason is not the actual reason for the adverse action. *See Forrester v. Rouland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006) ("[I]f the stated reason, even if actually present to the mind of the employer, wasn't what induced him to take the challenged action, it was pretext."). Thus, pretext is not a mistake, but rather a phony reason. *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 640 (7th Cir. 2001). Pretext is not shown by casting doubt on the correctness or wisdom of the employer's decision, "because the question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest*.'" *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (quoting *Gustovich v. AT&T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)).

Defendants argue that Plaintiff was disciplined more harshly than Litsey not because she was an African-American female but because she hit Litsey in anger and lied about it during the investigation. Plaintiff bears the burden of showing that this reason is pretext. But all of Plaintiff's arguments for pretext are essentially about the quality of the investigation into her complaint about Litsey and the conclusions the Postal Service made: She notes that Vaughn Jarrett did not immediately contact the Threat Assessment Team or the Postal Inspection Service. She also believes Vaughn Jarrett should have interviewed all of the employees working in the facility the same day the incident took place. Finally, she argues that Vaughn Jarrett's investigation could not

have been "careful and thorough" if she found Litsey was only "play acting" and that Smith intentionally struck Litsey.

All this is irrelevant to the issue of pretext. *Id.* ("[A]rguing about the accuracy of the employer's assessment is a distraction."). While Smith disagrees with many of the choices made by the Postal Service in conducting the investigation and in the conclusions that it made, she has presented no evidence whatsoever that the Postal Service's stated reason for disciplining Smith was not its actual reason for disciplining her. She wants a trier of fact to infer from the evidence before the decisionmakers that the decisionmakers must not have been motivated by their stated reasons. But there are no circumstances that allow that inference in this case.

The Seventh Circuit has hinted that there are cases where a disparate investigation might be relevant: "[plaintiff's] energy is misspent by attacking the company's decisional process, unless she could point to facts suggesting that the company investigated her differently because she was [an African-American female]." *Id.* However, Plaintiff is unable to present any evidence that the investigation was conducted differently because she was an African-American female.

Plaintiff claims that the Postal Service treated her complaint that she was struck by a Caucasian male differently than another incident where a Caucasian male was struck by an African-American woman. The other incident involved an African-American woman, Ollie Brown, striking a Caucasian man, Mark Galovic. Brown was giving a presentation in front of most of the employees at the Nora station when Galovic made a

snippy comment. Brown walked up to Galovic and struck him in the lower chest with the back of her hand or forearm and then turned away while making comments about Galovic.

According to Plaintiff, the investigation into her complaint was less formal and urgent than the investigation into the other incident. The inference that she wishes the trier of fact to make is that while the post office tolerates violence from Caucasian men against African-American women, it does not tolerate it from African-American women against Caucasian men. This is quite a leap, but following her logic further, a trier of fact could conclude that the post office is applying its legitimate expectations in a discriminatory manner and thus the nondiscriminatory reason for the adverse action—Smith's lying—was itself a lie, proving pretext.

It is highly doubtful that this is enough to get her case to a jury. Remember that the *McDonell Douglas* burden-shifting test is itself an indirect approach to proving discrimination. What Plaintiff asks for is an opportunity to indirectly prove the indirect approach. She wants the fact that her complaint was taken less seriously than another to be enough to take her case to a jury that her discipline was discriminatory—a dubious contention.

Assuming *arguendo* that such an argument is legally sufficient to prove pretext, Plaintiff gets hung up on the first rung of her logical chain. It is not clear that there are any material differences between the two investigations, much less that her claim was taken less seriously than the other. She claims that the Threat Assessment Team and

the Postal Inspection Service were contacted on Galovic's claim; however, the Threat Assessment Team was involved in the investigation into her complaint as well. (However, it was Smith who initially contacted the Postal Inspection Service.)  She notes that the investigation into Galovic's complaint involved interviewing all of the employees at the facility that day, but in reality it only involved interviewing employees who witnessed the incident.  The investigation into her complaint also involved interviewing anyone who saw the incident within a reasonable time.

      None of these "differences" is particularly damning anyway.  No two investigations will be exactly the same based on the facts of each incident.  Even if the Threat Assessment Team was not called as immediately in Smith's case as in Galovic's, the incident between Smith and Litsey was long over before anyone in management was informed.  Initially, Smith did not complain that she had been injured. There was no indication that Litsey was still angry or hostile with Smith, if he ever was. In contrast, Brown demonstrated hostility toward Galovic in front of numerous employees and kept muttering things about him.  Postal Service was justified in taking a more hurried approach to discover exactly what happened.

      Smith further claims the fact that she was investigated (but not Galovic) demonstrates she was targeted based on her race.  But Smith's behavior was not investigated until evidence turned up suggesting that Smith hit Litsey back.  (The

evidence was the statement of Keller, a witness not directly involved in the incident).[4] According to the record, no such evidence existed to cast doubt on Galovic's statement. There is no evidence that race played a role in her being investigated and punished.

As for Smith's vague assertions that her complaint was not taken as seriously as Galovic's complaint, there is nothing in the record to indicate this was the case. While Smith claims that the first response from Davis was: "Chris? Chris hit you? Not Chris," the investigation itself was quick and professional. It was determined by the Postal Service that Litsey did not intend to harm Smith. Still, his conduct was unacceptable; he was punished with a sternly-worded letter and a warning about future behavior. To the extent that the investigations into Smith's complaint and Galovic's complaint differed, there is no indication that it was because of race. In the end, Smith has provided no evidence from which a trier of fact could say that the Postal Service's stated reason for her discipline was pretext. Thus, her claim must fail.

## IV.   CONCLUSION

The Postal Service provided a legitimate, non-discriminatory reason for Smith's discipline. Smith has not shown that this reason was pretext. She may feel that she has been punished unfairly and that the Postal Service is wrong when it says she lied about hitting Litsey. Whether or not that is true is irrelevant to a Title VII case. As the Seventh Circuit has stated many times, Title VII does not call for courts to sit as "super-

---

[4] Plaintiff also complains that Litsey was not investigated for making a false statement despite her telling Davis that Litsey was lying. This is not quite right. Litsey's involvement in the incident was investigated and it was determined that he did not lie.

personnel departments." *See, e.g.*, *Traylor v. Brown*, 295 F.3d 783, 790 (7th Cir. 2002). The only issue for this court is whether Smith has provided enough evidence that she was discriminated against because of her race or sex to survive summary judgment. She has not. For this reason, Defendant's motion for summary judgment will be **GRANTED**.

ALL OF WHICH IS ENTERED this 30th day of March 2007.

John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge Tim A. Baker

Andrew G. Jones
HASKIN LAUTER LARUE & GIBBONS
ajones@hlllaw.com

Kenneth E. Lauter
HASKIN LAUTER LARUE & GIBBONS
klauter@hlllaw.com

Debra G. Richards
UNITED STATES ATTORNEY'S OFFICE
debra.richards@usdoj.gov